[Cite as *Geriak v. Arnco, Inc.*, 2012-Ohio-3820.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97947**

## THOMAS A. GERIAK

PLAINTIFF-APPELLANT

vs.

## ARNCO, INC.

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-733375

**BEFORE:** Rocco, J., Cooney, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 23, 2012

**ATTORNEYS FOR APPELLANT**

Dennis P. Zapka
David H. Boehm
McLaughlin & McCaffrey, LLP
1111 Superior Avenue
Suite 1350
Cleveland, OH 44114

**ATTORNEYS FOR APPELLEE**

James S. Wertheim
Monica Levine Lacks
Candice L. Musiek
McGlinchey Stafford, PLLC
25550 Chagrin Blvd.
Suite 406
Cleveland, OH 44122

KENNETH A. ROCCO, J.:

{¶1} Plaintiff-appellant, Thomas A. Geriak ("Geriak"), appeals from the trial court's judgment granting partial summary judgment in favor of defendant-appellee, Arnco, Inc. ("Arnco"), and denying Geriak's cross-motion for summary judgment. We hold that the trial court properly granted Arnco's motion for summary judgment and properly denied Geriak's cross-motion for summary judgment. Accordingly, we affirm the trial court's final judgment.

{¶2} This breach-of-contract case involves the terms of an employment agreement ("the Agreement") entered into on March 12, 2007 between Geriak and Arnco. Arnco terminated the employment relationship on May 5, 2010. Geriak filed a complaint against Arnco on August 3, 2010. The complaint asserted claims for breach of contract, unjust enrichment, and injunctive relief. At the heart of Geriak's complaint was the allegation that Arnco had breached the Agreement by continuing to use Geriak's formulas after the employment relationship had terminated. According to Geriak, he had developed some of the formulas before coming to work for Arnco and Arnco was prohibited from using those formulas in its products after Geriak left Arnco.

{¶3} At the close of discovery, Arnco filed a motion for summary judgment and Geriak filed a cross-motion for summary judgment. The trial court granted in part and denied in part Arnco's motion for summary judgment and denied Geriak's cross-motion for summary judgment. Geriak filed his notice of appeal from the trial court's entry of final judgment and presents two assignments of error for review.

**"I.    The trial court erred by granting Arnco's Motion for Summary Judgment.**

**"II.    The trial court erred by denying Thomas A. Geriak's Cross-Motion for Partial Summary Judgment."**

{¶4} We overrule both of Geriak's assignments of error.   Because Geriak's second assignment of error mirrors the arguments he makes in his first assignment of error, we consider them together.

{¶5} We review summary judgment rulings de novo.   *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).   Summary judgment is appropriate when there is no genuine issue as to any material fact; (1) the moving party is entitled to judgment as a matter of law; and (2) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.   Civ.R. 56(C); *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 6.   The Agreement expressly provides that it is governed by California state law, so we apply California law when construing the Agreement.

{¶6} Geriak makes six separate arguments as to why the trial court erred in granting Arnco's motion for summary judgment and denying his cross-motion for summary judgment.   None of these arguments are meritorious, and so Geriak's assignments of error are overruled.

**{¶7}** First, Geriak argues that he is entitled to commission payments for sales of products derived from formulas he developed prior to entering into the Agreement. According to Geriak, the Agreement specifies that Arnco is entitled to continue to sell "Products" that Geriak developed while working for Arnco, but not to utilize any formulas that Geriak developed prior to his employment with Arnco. Geriak alleges that, to the extent that Arnco's products utilize formulas he developed before working for Arnco, Geriak is entitled to a commission. We disagree.

**{¶8}** Under California contract law, the contract language governs "'if the language is clear and explicit and does not involve an absurdity.'" *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal.App.4th 944, 956, 135 Cal.Rptr.2d 505 (4th Dist.2003) (quoting Cal. Civ. Code 1638). Under the plain meaning rule, courts give the contract's words their usual and ordinary meaning. *Gravillis v. Coldwell Banker Residential Brokerage Co.*, 143 Cal.App.4th 761, 774-775, 49 Cal.Rptr.3d 531 (2d Dist. 2006). Under California law, the objective intent as expressed in the words of the contract governs interpretation. *Founding Members of the Newport Beach Country Club*, at 956. The parties' undisclosed intent or understanding is irrelevant. *Id.* Usually "the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms." *Wolf v. Walt Disney Pictures & Television*, 162 Cal.App.4th 1107, 1126, 76 Cal.Rptr.3d 585 (2d Dist. 2008); Cal.Civ. Code 1639 ("[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained by the writing alone, if possible *

* *."); Cal.Civ. Code 1638 (the "language of a contract is to govern its interpretation * *

*.")

{¶9} The Agreement contained the following relevant terms:

Employer hereby employs Employee to render Employee's exclusive full time services to Employer * * *. Employee's responsibilities shall include the following: (i) research and developing new epoxy and floor coating products to be sold by Employer (the "Products"), (ii) testing potential products in Employer's laboratory located in Berea, Ohio, (iii) supervising the manufacture of the Products; (iv) marketing and selling the Products to customers throughout the world.

Agreement ¶ 1. Paragraph 10 of the Agreement provided that:

If this agreement is terminated as set forth in this Paragraph 10, then the payment by the Employer of the base compensation and Gross Profit payment theretofore earned by Employee shall be payment in full of all compensation hereunder. Upon termination of this Agreement for any reason (with or without cause), the Products (as defined above) shall be deemed to be co-owned by Employer and Employee so that Employer and Employee may continue to manufacture and sell the Products in perpetuity.

Further, Geriak and Arnco agreed in ¶ 13 that:

[A]ll formulas, specifications, procedures and sales and marketing

information developed by Employee in connection with the Products (the

"Employee Developed Information") shall not be Employer's proprietary

information but shall be deemed to be co-owned by Employer and

Employee. * * * After termination of this Agreement, Employer and

Employee shall co-own the Employee Developed Information and the sale

by Employee of the Products developed by Employee hereunder shall not be

deemed a breach of this Agreement. * * * A Product shall be deemed to be

developed by Employee if the Product was developed substantially due to Employee's time, skill and efforts.

**{¶10}** The trial court determined that, although Geriak alleged that he had developed certain formulas before entering into the Agreement with Arnco, the Agreement required Arnco to compensate Geriak only for Products that he developed while working for Arnco. That compensation continued only for so long as Geriak was employed by Arnco. Because the Agreement did not require Arnco to compensate Geriak for formulas, the trial court granted Arnco's motion for summary judgment on Geriak's claim that Arnco was required to compensate Geriak for the use of his formulas. We agree that the plain language of the Agreement supports this interpretation.

**{¶11}** Geriak bases his argument on the language in the Agreement stating that his responsibilities included:

> (i) research[ing] and developing new epoxy and floor coating products to be sold by Employer (the "Products"), (ii) testing *potential products* in Employer's laboratory located in Berea, Ohio, (iii) supervising the manufacture of the Products; (iv) marketing and selling the Products to customers throughout the world.

Agreement ¶ 1. According to Geriak, because subsection (ii) does not capitalize the "p" in "products" this word must mean something different than the defined term "Products." Geriak argues that "products" must mean "other products which would not be derived from formulas researched and developed by Geriak while he was employed by Arnco [that] would also be part of the [] product line." (Emphasis added.) Geriak Br. at 12. The argument continues that because co-ownership was to apply only to newly

derived, "Products," Arnco does not have the right to use Geriak's "products," and must now compensate Geriak so long as it continues to use these "products."

{¶12} This argument is tenuous at best. The plain meaning of subsection (ii) is that it refers to "potential products," those things that have the potential to be fully developed through Geriak's labor. Geriak points to nothing in the Agreement that can support the reading that "products" with a small case "p" means anything more than products in the process of development.

{¶13} As California law requires us to apply the plain and ordinary meaning of the language in the Agreement, we find Geriak's interpretation is without merit. Because Arnco was required to compensate Geriak only for his Products while working at Arnco, and because the Agreement makes clear that all Products are co-owned by Arnco and Geriak, the trial court did not err in granting summary judgment to Arnco on Geriak's claim that he was entitled to ongoing compensation after his employment was terminated.

{¶14} Geriak also claims that Arnco knowingly disclosed Geriak's proprietary and confidential information to other entities without privilege to do so. As in his first claim, Geriak's argument here hinges on his interpretation of "products" with a lowercase "p." According to Geriak, Arnco does not own products that were derived from formulas that he developed before working for Arnco. The argument follows that Arnco does not have the right to disclose information to other entities respecting these products. But as we set forth above, Geriak's interpretation of "potential products" does not

comport with the plain language of the Agreement. Accordingly, his argument, which is based on that interpretation, is without merit.

**{¶15}** Geriak's claim that he is entitled to injunctive relief fails for the same reasons. Geriak argues that the Agreement does not provide for co-ownership of the formulas he developed prior to his employment with Arnco. The argument follows that Arnco should be enjoined from continuing to manufacture and sell products derived from formulas developed by Geriak before his employment with Arnco. We disagree with Geriak's interpretation of the Agreement. Arnco is acting within its contractual right to sell Products that were developed by Geriak while working at Arnco, regardless of whether formulas that were used in the making of those Products were developed prior to Geriak's employment at Arnco. Because there is no conduct that needs to be enjoined, Geriak's argument fails.

**{¶16}** Geriak's next argument is that Arnco breached the Agreement by knowingly failing to make timely commission payments. Geriak claims that he received payments late, but he does not dispute that payments were ultimately received. On appeal, he bases much of his argument on the existence of a rebate program that he discovered during the course of litigation. He argues that this rebate program impacted his commission payments. But evidence of the rebate program is not properly raised here on appeal.

**{¶17}** At the trial court, Geriak moved to amend his complaint to include a fraud claim on the basis that Arnco had not earlier disclosed the rebate program to Geriak.

The trial court granted Geriak's motion but also noted that Arnco had informed Geriak that its only rebate program was with a company that did not use products that Geriak had developed. Accordingly, Geriak would not be entitled to any commission in consideration of the rebate. Arnco's interrogatory answers denied the existence of any other rebate programs that would have affected Geriak's commission. The trial court order stated that if Geriak chose to go forward with a fraud claim based on the rebate program, and if the evidence supported Arnco's assertions, then Geriak would be liable for sanctions under Civ.R. 11 and R.C. 2323.51. Geriak did not file the amended complaint to raise the rebate-related claims.

{¶18} Geriak cannot now argue here on appeal about the rebate program. This is essentially a waived argument, and an attempt to introduce the rebate issue through the back door. Accordingly, we decline to address Geriak's arguments respecting the rebate program.

{¶19} Similarly, Geriak's argument that Arnco breached the Agreement by failing to provide him with necessary documentation to determine gross profit payments is also based on the rebate program. Accordingly, this argument is not well taken.

{¶20} Geriak also asserts that Arnco breached the Agreement by interfering with Geriak's ability to develop additional markets for product sales. His supporting evidence for this claim is that his supervisor did not approve his request to attend one trade show in the Northwest. The Agreement did not entitle Geriak to attend this trade show or any other particular trade show. Accordingly, this argument is without merit.

**{¶21}** Geriak asserts that his claim for unjust enrichment should not have been dismissed on summary judgment. There is no cause of action in California for unjust enrichment as it is just a restitution claim. *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1370, 108 Cal.Rptr.3d 682 (4th Dist.2010). Geriak concedes that California does not recognize a claim for unjust enrichment, particularly where a contract already exists. *Cal. Med. Assoc., Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal.App.4th 151, 172, 114 Cal.Rptr.2d 109 (2001). Geriak's position is that because the Agreement has been terminated, and because Arnco continues to improperly profit from formulas that Geriak developed before working for Arnco, unjust enrichment is a viable remedy.

**{¶22}** The Agreement fully governed Geriak's relationship with Arnco with respect to formulas and compensation. The Agreement stated:

> [A]ll formulas, specifications, procedures and sales and marketing information developed by Employee in connection with the Products (the "Employee Developed Information") shall not be Employer's proprietary information but shall be deemed to be co-owned by Employer and Employee.

Agreement, ¶ 13.

**{¶23}** Even if we accepted Geriak's argument that an unjust enrichment claim could stand under California law, we would still reject his claim. Geriak's argument is again based on the premise that Arnco has no right to products that Geriak developed while at Arnco that are derived from formulas Geriak developed before he worked at Arnco. We have explained above our reasons for rejecting this line of reasoning. To

the extent that Geriak's unjust enrichment claim is based on this same premise, we reject this claim as well.

**{¶24}** The trial court's orders are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

COLLEEN CONWAY COONEY, P.J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS
(SEE ATTACHED OPINION)

SEAN C. GALLAGHER, J., CONCURRING:

**{¶25}** I concur with the judgment and analysis of the majority. In my view, paragraph 13 of the agreement makes no distinction between formulas created prior to or after the agreement. Arguably, the language "all" implies it covers both. What is unclear from this appeal is whether the Gross Profit payment, referenced in paragraph 10 of the agreement, entitles Geriak to any compensation for Products ("Products" with a capital "P") sold by Arnco in the future.